IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
CASE NO.: 5:18-cv-286

| | |
|---|---|
| FAULCONER CONSTRUCTION COMPANY, INC., | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) |
| SAUER, INCORPORATED, | ) ) |
| Defendant. | ) ) |

**COMPLAINT**

Plaintiff, Faulconer Construction Company, Inc. ("Faulconer"), by counsel, hereby files and serves its Complaint against Defendant, Sauer, Incorporated ("Sauer"), and states as follows:

## PARTIES

1. Faulconer is a Virginia corporation having its principal place of business in Charlottesville, Virginia. Faulconer is a sitework subcontractor specializing in earthwork, grading, storm drainage and other sitework. Faulconer is and was, at all times relevant herein, registered to conduct business in the State of North Carolina and authorized to perform work on federal public works projects.

2. Sauer is a Florida corporation, having its principal place of business in Jacksonville, Florida.

## JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different states.

4. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to Plaintiff's claims occurred in this judicial district.

## FACTS

5. On or about July 29, 2014, Sauer and Faulconer entered into a teaming agreement for the purpose of submitting a proposal to the U.S. Army Corps of Engineers ("Corps") for a construction project at Fort Bragg. The project involved the construction of several roadways, site work, storm drainage, erosion control, and other work within Fort Bragg, and was generally known as SOF Battalion Operations Yarborough Complex at Patriot Point Roadways, PN 69287, Task Order Request Number W91278-11-X-2905 ("Project").

6. Sauer was deemed to be the successful bidder for the Project, and on or about September 29, 2014, Sauer entered into a design-build contract with the U.S. Army, whereby Sauer was to design and construct the Project for the fixed price of $15,404,000.

7. Sauer entered into a subcontract with Timmons Group, Inc. ("Timmons"), whereby Timmons would design the Project.

8. On or about November 24, 2014, Sauer entered into a subcontract with Faulconer for the fixed price amount of $11,045,210, whereby Faulconer would perform site work, storm drainage, erosion control and other work for the Project. A true and accurate copy of Sauer's subcontract with Faulconer for the Project is incorporated herein by reference and attached hereto as **Exhibit A** ("Subcontract").

9. As the sitework subcontractor for the Project, Faulconer did not design the Project and it was not responsible for the Project's design.

10. Due to the design-build nature of Sauer's contract with the Corps, the Project's design was not complete at the time Faulconer submitted its proposal to Sauer and at the time it

entered into the Subcontract. At the time the Subcontract was entered into, the Project's design consisted of the Corps' Request for Proposal drawings and Timmons' storm drainage conceptual design (collectively "Initial Design"). There were no erosion control drawings at the time of bid and contracting. The Initial Design represented approximately 35% completion of the Project's eventual entire design.

11. In entering into the Subcontract, Sauer also directed Faulconer to not include a contingency markup in its Subcontract price to cover the risk of increased costs associated with the incomplete design. By not including a contingency markup, Sauer received the benefit of a lower Subcontract price.

12. The parties agreed upon and defined the risks associated with the incomplete design in the Subcontract's scope of work. In accordance with the Subcontract terms, Faulconer priced its Subcontract scope of work solely upon the Initial Design and what was necessary and reasonably inferable therefrom.

13. Faulconer's Subcontract scope of work is defined in Article 2 of the Subcontract. Article 2.1 of the Subcontract states that "[Sauer] contracts with [Faulconer] as an independent contractor to provide all labor, materials, fuel, equipment, and services necessary or incidental to complete the Subcontract Work described in Article 1 for the Project in accordance with, ***and reasonably inferable from the Subcontract Documents***, and consistent with the Project Schedule, as may change from time to time." (emphasis added.)

14. Article 2.3 of the Subcontract is titled "Subcontract Documents," and states that "Subcontractor shall perform the Subcontract Work ***in strict accordance with the Subcontract Documents identified in the Article 13***." (emphasis added.)

15. Schedule A of Article 13 of the Subcontract is titled "Scope of Work" and states: "[f]urnish all labor, material and equipment to complete all stated work as described in and shown on the contract documents, the full contents of which are listed *in Schedule "B" Document List* of the Subcontract Agreement. *Complete work that is currently shown, and that which can be reasonably anticipated to be included for this project*." (emphasis added.)

16. Schedule A of Article 13 of the Subcontract further states "[Faulconer] hereby agrees to perform and complete the work for the Subcontract Price stipulated in the Agreement. Subcontractor acknowledges that this is a Design-Build project and as such the design documents are a work in progress and that there will be items of work *that are necessary and normally required* for the proper operation of such systems, or to complete otherwise incomplete construction, that are yet to be incorporated into the Subcontract Documents ("*Inferred Items*"). Subcontractor hereby agrees that included in the Subcontract Price, are all costs for providing all labor, material, equipment, supervision, and all other facilities and services necessary to provide a 100% complete, code compliant, operable and functioning system, *including Inferred Items*, so that Subcontractor's work will be a fully compatible and a complete component of the work as required by Sauer's contract with the Owner. Subcontractor hereby waives and agrees that it will make no claims for any work not shown in the Subcontract Documents *which is necessary to provide* a 100% complete, code compliant, operable and functioning system, complete and compatible in accordance with the intent of the Subcontract Documents." (emphasis added.)

17. Schedule B of Article 13 of the Subcontract identifies the following documents as Subcontract Documents:

    A.    Contract #W91278-11-DQ01; SOF Roadways and Infrastructure, Fort Bragg, N.C. including all plans and specifications enumerated therein including RFP Solicitation No. W91278-11-X-2905. Consisting of solicitation/specification and Drawings listed below.

  B.  Solicitation/Specifications entitled "SOF Battalion Operations Yarborough Complex at Patriot Point Roadways PN 69287" 968 pages.

  C.  Drawings in three volumes:

    a.  Volumes – Entitled "Yarborough Complex at Patriot Point Volume 1 RFP Roadways – FY 13 PN 69287 – Roadways" 91 sheets

    b.  Volume 2 – "Yarborough Complex at Patriot Point Volume 2 – RFP Infrastructure – Phase 2 FY 13 LI 78499 (69287)" 106 sheets

    c.  Volume 3 – "Yarborough Complex at Patriot Point Volume 3 – RFP Reference Drawings FY PN 69287" – 306 sheets

  D.  RFP Amendments:

    a.  AMD 0001 dated July 22, 2014

    b.  AMD 0002 dated August 05, 2014

    c.  AMD 0003 dated August 14, 2014

18. Pursuant to Articles 2 and 13 of the Subcontract, the Subcontract scope of work and price is based upon the three RFP drawings listed in Schedule B of Article 13 (*i.e.*, the Initial Design), and what was necessary or reasonably inferable therefrom.

19. Pursuant to Articles 2 and 13 of the Subcontract, Faulconer assumed the risk for work that was included in the Initial Design and work that was necessary or reasonably inferable therefrom.

20. Pursuant to Articles 2 and 13 of the Subcontract, Sauer assumed the risk for work that was not included in the Initial Design and which was not necessary or reasonably inferable therefrom. Sauer was required to issue change orders for work that was not included in the Initial Design and which was not necessary or reasonably inferable therefrom.

21. Faulconer commenced its Subcontract work on or about April 13, 2015.

5

22. Subsequent to the Initial Design and during the course of the Project, Sauer issued more than twelve (12) separate design packages to Faulconer. On or about November 16, 2015, Sauer submitted its Issued for Construction Drawings (100% drawings) ("IFC Drawings") to Faulconer.

23. The IFC Drawings were not included in Schedule B of Article 13 of the Subcontract, and were not included as part of the Subcontract scope of work. Sauer never issued a change order adding the IFC Drawings as a Subcontract Document or including them within the Subcontract scope of work.

24. The IFC Drawings contained numerous changes and additions to the Initial Design which increased the scope and cost of Faulconer's Subcontract work. The IFC Drawings contained numerous changes and additions which were not included in the Initial Design and were not necessary or reasonably inferable from the Initial Design.

25. On or about December 2, 2015, Sauer requested that Faulconer identify the changes and additions in the IFC Drawings so that a potential change order could be issued. Sauer's request was an acknowledgment that the IFC Drawings contained items of work that were not included in Faulconer's scope of work, and that Faulconer was not responsible for such changes or additions. If Faulconer was at-risk for all design changes after the Initial Design, Sauer would have never requested that Faulconer identify changes and additions for a potential change order. A true copy of Sauer's request to Faulconer is attached hereto as **Exhibit B**.

26. Pursuant to Sauer's request, Faulconer identified the changes and additions arising from the IFC Drawings which were not included in the Initial Design or necessary or reasonably inferable therefrom, and it submitted them to Sauer for a proposed change order.

27. However, Sauer backtracked from its December 2, 2015 request and it has refused to recognize and issue a change order for the changes and additions arising from the IFC Drawings.

28. Sauer directed Faulconer to perform the changed and additional work arising from the IFC Drawings without additional compensation.

29. In accordance with the terms of Subcontract, Faulconer performed the changed and additional work under protest and it submitted a claim to Faulconer for the disputed work and costs. Faulconer's final claim submission to Sauer, without exhibits, is attached hereto as **Exhibit C** and incorporated by reference herein.

30. Sauer has received the full benefit and value of the changed and additional work, which was performed by Faulconer and arose from the IFC Drawings, without having to compensate Faulconer for performing such work.

31. During the Project, Sauer issued thirteen (13) change orders which increased the Subcontract price to $13,592,791.00. In several instances, the change orders included additional costs arising from the completion of the design, which was further recognition that Faulconer's Subcontract scope of work was limited to the Initial Design and what was necessary or reasonably inferable therefrom.

32. In addition to the changed and additional work arising from the IFC Drawings, Faulconer performed additional work on the Project on a time and material cost basis, for which Sauer has failed and refused to compensate Faulconer.

33. Faulconer has repeatedly attempted in good faith to resolve its claims with Sauer. However, Sauer has refused to respond to Faulconer's claim. As a result of Sauer's actions and inactions, Faulconer has been forced to hire attorneys, and has incurred attorneys' fees and costs,

to protect its interests under the Subcontract; to institute suit to enforce the Subcontract provisions; and to collect damages for Sauer's breaches of the Subcontract. Faulconer also reserves its right to hire expert witnesses in connection with this litigation. Pursuant to Article 11 of the Subcontract, and applicable law, Faulconer is entitled to recovery of, and reimbursement from Sauer for, its reasonable attorneys' fees, costs, charges, expenses, and expert fees and costs that it has incurred and will incur in the future. Faulconer's attorneys' fees, costs and expert witness fees have not yet been determined but will be determined and proven at trial.

34. Without justification, Sauer has failed and refused to fully pay Faulconer for the claims and amounts sought in Faulconer's final claim submittal. Sauer has also failed and refused to fully pay Faulconer for the work it performed for the Project in accordance with the terms of the Subcontract.

35. Faulconer fully and properly performed its Subcontract work for the Project in accordance with the terms and conditions of the Subcontract and Sauer's directions.

36. Faulconer performed its Subcontract work in a timely manner, and Faulconer did not delay the completion of the Project or the performance of Sauer's work.

37. Faulconer has complied with all terms and conditions of the Subcontract.

38. All conditions precedent to bringing this lawsuit have been performed or have been waived.

## COUNT I – BREACH OF CONTRACT
*(CHANGES AND ADDITIONS ARISING FROM THE IFC DRAWINGS)*

39. Faulconer realleges paragraphs 1-38 above as if fully stated herein.

PPAB 4300242v1

40. Sauer materially breached its Subcontract with Faulconer by failing and refusing to fully and timely pay Faulconer for changes and additional work arising from the IFC Drawings.

41. Sauer materially breached its Subcontract with Faulconer by failing and refusing to fully and timely pay Faulconer for performing work outside its Subcontract scope of work.

42. Sauer's material breaches include, but are not limited to, its failure to provide additional compensation to Faulconer under the Subcontract for performance of the following additional work arising from the IFC Drawings:

    a.) Installing additional storm drainage across African Lion Blvd.;

    b.) Installing additional stone base on the Project due to grade elevation changes at African Lion Blvd. and changes to the radii at Project intersections;

    c.) Adding concrete to drainage ditches;

    d.) Additional guardrail;

    e.) Revisions to bio-retention ponds on Urban Freedom Drive; and

    f.) Additional storm drainage across Tora Bora Blvd;

43. As a direct and proximate result of Sauer's material breaches of the Subcontract, Faulconer has been damaged in an amount to be determined at trial, but which to date is at least $468,785.60, plus pre-judgment interest, costs, and attorneys' fees.

### COUNT II – BREACH OF CONTRACT
### (*VERIFICATION OF UTILITY LOCATIONS*)

44. Faulconer realleges paragraphs 1-43 above as if fully stated herein.

45. During the Project, Sauer directed Faulconer to verify the locations of utilities on the Project, which was not included within Faulconer's Subcontract scope of work.

9
PPAB 4300242v1
Case 5:18-cv-00286-FL   Document 1   Filed 06/18/18   Page 9 of 13

46. Sauer has failed and refused provide a change order or additional compensation to Faulconer for its work in verifying the utility locations.

47. Pursuant to the Subcontract, Faulconer performed the utility verification work under protest and it submitted a claim to Sauer for its additional costs in performing such work.

48. Sauer materially breached its Subcontract with Faulconer by directing Faulconer to perform the out-of-scope utility verification work and failing to issue a change order and additional compensation to Faulconer for the performance of such work.

49. As a direct and proximate result of Sauer's material breaches of the Subcontract relating to Faulconer's utility verification work, Faulconer has been damaged in an amount to be determined at trial, but which to date is at least $56,957.30, plus pre-judgment interest, costs, and attorneys' fees.

### COUNT III – BREACH OF CONTRACT
### (*T&M WORK*)

50. Faulconer realleges paragraphs 1-49 above as if fully stated herein.

51. During the Project, Sauer directed Faulconer to perform changed and additional work on a time and material cost basis, which was not included within Faulconer's Subcontract scope of work.

52. Faulconer's time and material work included additional work arising from design changes, undercut, and other miscellaneous changes.

53. Sauer has failed and refused to provide a change order or additional compensation to Faulconer for its time and material work.

54. Pursuant to the Subcontract, Faulconer performed the time and material work per Sauer's directives and it submitted a claim to Sauer for its additional costs in performing such work.

10

PPAB 4300242v1
Case 5:18-cv-00286-FL   Document 1   Filed 06/18/18   Page 10 of 13

55. Sauer materially breached its Subcontract with Faulconer by directing Faulconer to perform the time and material work and failing to issue a change order and additional compensation to Faulconer for the performance of such work.

56. As a direct and proximate result of Sauer's material breaches of the Subcontract, Faulconer has been damaged in an amount to be determined at trial, but which to date is at least $342,879.88, plus pre-judgment interest, costs, and attorneys' fees.

### COUNT IV – UNJUST ENRICHMENT AND QUANTUM MERUIT

57. Faulconer realleges paragraphs 1-56 above as if fully stated herein.

58. This claim is alleged in the alternative to the existence of an express contract between Sauer and Faulconer involving the out-of-scope work performed by Faulconer for the Project.

59. Sauer received the full benefit and value of out-of-scope work that Faulconer performed on the Project, including out-of-scope work arising from the IFC Drawings, verification of utility locations, and time and material work.

60. Faulconer reasonably expected to be paid for the labor, equipment and materials it provided to the Project, and Sauer voluntarily and knowingly accepted the benefits of Faulconer's labor, equipment, and materials with knowledge that Faulconer expected payment for its work.

61. Sauer has failed and refused to fully pay Faulconer for the out-of-scope work that it performed on the Project.

62. As a result of Sauer's failure to pay, Sauer has been unjustly enriched by the unpaid labor, equipment and materials provided by Faulconer for the Project.

63. To the extent it is determined that the parties did not have a contract for the performance of such out-of-scope work, Sauer is liable to Faulconer pursuant to the legal doctrines of unjust enrichment and quantum meruit for the reasonable value of the labor, materials and equipment which Faulconer conferred upon Sauer, and which has not been paid to Faulconer.

64. As a proximate result of Sauer's failure to fully pay Faulconer for the reasonable value of Faulconer's work for the Project, Faulconer has been damaged in the amount of at least $868,622.78, plus interest, costs and attorneys' fees as allowed by applicable law.

## COUNT V – PROMPT PAYMENT ACT

65. Faulconer realleges paragraphs 1-64 above as if fully stated herein.

66. Faulconer is a subcontractor as the term is defined in N.C. Gen. Stat. § 22C-1.

67. Upon information and belief, Sauer has received payment from the Corps for the labor, equipment, and materials furnished by Faulconer to the Project.

68. Sauer has failed or refused to pass along payment to Faulconer.

69. Sauer's failure or refusal to pay Faulconer within seven (7) days of payment from the Corps constitutes violations of the North Carolina Prompt Pay Act, N.C.G.S. § 22C-1.

70. As a proximate result of the continuing failure of Sauer to remit payments to Faulconer pursuant to North Carolina's Prompt Pay Act, Faulconer is entitled to the recovery of interest in the amount it is owed at the rate of 1% per month in accordance with N.C. Gen. Stat. § 22C-5.

WHEREFORE, Faulconer prays the Court that:

1. It have and recover of Sauer, Inc., the damages to be determined at trial which, as set forth in the above Claims, are not less than $868,622.78.

2. Pre-judgment interest, costs and attorneys' fees be awarded to Faulconer.

3. The Court grant such other and further relief as it deems proper.

This the 18th day of June, 2018.

          FAULCONER CONSTRUCTION COMPANY, INC.

          BY: /s/ Charles C. Meeker
              Charles C. Meeker, Esq.
              N.C. Bar #6757
              Parker Poe Adams & Bernstein LLP
              PNC Plaza
              301 Fayetteville St., Ste. 1400
              Raleigh, North Carolina 27602
              Phone: (919) 890-4168
              Fax: (919) 834-4564
              Email: charlesmeeker@parkerpoe.com

              *Counsel for Faulconer Construction Company, Inc.*